Next case is 073190, Sadiq v. Bethesda National Air Force, Dr. Sadiq Good morning, Your Honor. My name is Jason Crump. I represent the petitioner, Waheed v. Sadiq. With regard to this appeal, I want to correct you using the following road map. May it please the Court, my name is Jason Crump. I represent the petitioner, Waheed v. Sadiq. Keep in mind that the standard is whether or not the arbitrator abuses discretion and whether or not there's enough evidence supported by the record to affirm his opinion. I would direct you in this appeal using the following road map. One, the evidence from the record illustrates that 30 tablets of the drug Adderall was never missing. Number two, Sadiq followed the agency protocol for missing narcotics as referenced in page 16 and page 19 of the appendix. And finally, she changed the inventory count. She did not change the inventory count insofar as that she altered it. What happened was that What's the difference between altered and changed? Well, in this instance, there were no missing drugs, and the difference in this particular instance is that the drugs were The agency would have you believe it was some type of concealment. However, it was not a concealment. It was actually just to reflect what she counted on hand. Earlier on, there was actually when she counted the tablets, there were 332 tablets that she counted and she actually processed it in the computer database, that being the CHCS system. The facts are not really in dispute on that. I mean, everybody agrees that she didn't steal any pills. Yes, that's correct. I can characterize it in this brief. I don't think it's unfair to say she got panicked over her numbers and what she ended up doing was manually trying to reduce the inventory number in order to coincide with what she thought was there. But she, in fact, was wrong because all pills were really there. And it's simply been a computer glitch. So we all agree on the facts. Am I correct that the only real issue before us, Mr. Croak, is whether she should have been fired or whether they should have done something less. And I believe that is exactly the issue. The agency said, we view this as a very serious matter because she tampered with the records. Exactly. The arbitrator upheld the agency. That's correct. And we have a very limited review opportunity since our standard of review is quite limited. What is it you propose we could do? Well, I think the case law is clearly clear on this issue. If, in fact, the arbitrator's decision is unreasonable as his penalty, then that's an exception to the rule that she must affirm. I think in this particular instance, he must reverse because the penalty was way too unreasonable. It was certainly severe. It was certainly severe. Whether it was beyond the realm of appropriate response by the agency, as the arbitrator said it was within that realm, that's a very difficult question for you to answer. I don't think it is at all, actually, because there are certain facts that the arbitrator failed to mention in his opinion that are actually available in the record. Basically, the agency is using the whole notion that she failed to follow procedures in this instance, and that is the reason why there's the penalty of removal. Well, she certainly did fail to follow. And I actually disagree with you in that case, and the reason why I disagree with you is that if you look at the record, if you go directly to page 15, it discusses the issue of what happens when there are discrepancies. And in actuality, if I may just read for just a portion, it says that on page 16, the technician must sign the appropriate enactment, however, and make an entry in the service law that he should change. Granted, I just- We're agreeing. I'm sorry, page 16 of the joint appendix. Right. Joint appendix. It further states that the off-point technician should not be relieved until all discrepancies are resolved. Well, in this particular instance, Ms. Sadiq did everything she could to resolve the discrepancy. The most important notation or the most important fact is the fact that the oncoming technician actually came on duty. She did not, when there was a discrepancy, she did not leave her post until the discrepancy was actually rectified. Now, once you've read that particular entry of the pharmacy manual, I want you then to pay your attention to page 25 of the manual, what actually shows the actual notation made by the oncoming pharmacy technician. And this is actually a service entry made by the oncoming technician that shows that there were actually no discrepancies noted, no discrepancies with the law. The reason I point this out to you is because of the fact that these are one of the things that I believe is a major mitigating circumstances with respect to any penalty that was imposed on Ms. Sadiq. In this instance, she did all she could to rectify the discrepancy. She waited until the oncoming technician came on, and the oncoming technician even shows in his note that there were no discrepancies. This was at the same time that she believed that there was belief or reason to believe that a discrepancy existed. At that point in time, it's our belief, it's our contention that the agency, there should have been no charges. There was no harm in this instance. There were no pills missing. So it was not a situation where she panicked and now let's go back to the computer processing unit and try to decrement the amount reflected. She did basically what she was supposed to, pursuant to the rules, but it's my contention that she took the extra measure of trying to figure out why, in fact, the computer system malfunctioned. Now, there's evidence in the record, there was always malfunctioning. There was a new system that was just implemented by the Department of Navy. And at some point, when certain technicians would put in the drugs into the actual computer, it wouldn't always show up into the system. And this is one of those occasions. And so I think that this fact by itself is one of the mitigating circumstances that Your Honor should be aware of in not using the penalty that the arbitrator used. I'd like to go to my second argument, basically, with respect to the drugs not missing. This is not a case, as noted, that she failed to follow, that Mr. Dick failed to follow procedures. I believe this is strictly a case of the computer error. Now, the government is premising its whole argument, as referenced before, on her failure to follow procedures, and that you should affirm your arbitration, arbitrators were based upon the fact that there's a substantial nexus between the penalty imposed and the alleged misconduct. Well, obviously, I think the arbitrator failed to consider not only the entry of the law court, but the fact that there was no loss. There was no loss in this particular instance. And for purposes of the Douglas factors, there was evidence that Ms. Sadiq was a seven-year employee, and she had not lost a pill in her entire career. In this instance, she simply went beyond her call of duty and actually tried to figure out what had happened. But had she did nothing, she would have a job today. Well, Mr. Crump, not to argue with you, but the arbitrator did say that they both believed that the gravamen of the offenses originally charged was not whether drugs were actually lost, but whether Sadiq bypassed the rules and thereby made possible such a loss. And that's where I say that. So he did consider the fact that there was no loss. That's my point. I don't think it's quite fair to say the arbitrator ignored the fact that there really was no loss. He seemed to understand that. But I think what the arbitrator failed to do was use the instances that occurred in this particular situation to mitigate the penalty. Basically, they failed to realize that Ms. Sadiq did everything she could. She tried to find the pills. She stayed after work to attempt to find these pills. And she realized that, first of all, she was the one that actually was in charge of filling the prescription. So she knew that these pills could not have been missing. She was the one involved in actually filling the prescription. It was a situation where I think the arbitrator failed to understand that, one, she was the sole person responsible for filling this prescription, and that computer error had to have been the situation where the amount on hand is not accurate with the computer system. She actually, all she tried to do was balance that amount. And that's what I referred to before. I think the balancing out was simply something that she did after to make the computer system in fact work because of the fact that it had not always picked up these particular drugs. Now, with reference to the agency says, well, the arbitrator says in his decision that the cause of the loss, by her failure to make proper notations in the log entry book, could potentially cause a loss that would be detrimental to the nation because of the fact that these are controlled substances that are addictive and so on and so forth. However, that is not the case in this instance. I mean, the computer error was the primary reason for the loss. And I want to hone in on the fact that all Ms. Zadig wanted to do was to make the computer balance out with the on-hand count. Now, for the arbitrator to go back and say, well, this is a penalty. She should be removed from that. I mean, it's just straight excessive. I mean, it's beyond reason in this instance because she did everything she could. She notified her supervisors of the loss. And as a matter of fact, as stated before, there was a pattern in practice of the fact that sometimes, all the time, entries were not placed into the log book when there was a discrepancy. And so I think that your honors have to take this into account. Now, if I may direct you to page two, just to reiterate what I was saying of the joint appendix. The arbitrator states that it seems Pharmacist Elliot Weiss, Ms. Zadig's supervisor, who was on duty at the time, testified that she was very concerned about the apparent shortage that everybody on the shift knew about her concern, and that she was counting and back counting to figure out the discrepancy. Now, those are things that I believe that make a direct reference to the Douglas factors that show that, look, she did all she could to rectify the situation. As stated previously, the oncoming technician came on board, rectified that there was no discrepancy. At that point, she could have let it all go. She could have said, okay, there is no discrepancy. And it's in our opinion that, at that point, there should have been no charge. And so, in final, I would like to just, in total, say that the Based upon the three-pronged test and James B. Dell, there is not sufficient nexus between the misconduct here and the efficiency of service to sustain the removal because Ms. Zadig did everything possible in her power to ensure that this harm could not occur. Thank you. May it please the court. The decision of the arbitrator in this case should be and consistent with governing law. I would like to begin by pointing out three misstatements of counsel regarding this case. First, he states that Ms. Zadig did follow the policy regarding discrepancies, and that is not supported by the record. If the court turns to joint appendix pages 19 through 21, they discuss specifically the steps that a narcotics technician is supposed to take when a discrepancy arises. Page 21 discusses the circumstances under which the decrement function should be used. That's the first point. The second point is that Ms. Zadig, in her briefing, has tried to suggest that at the time she went into the computer database and changed the quantity, she knew the reason for the discrepancy. There is no evidence in the record of that. And in fact, she did not have a reason. She did not know why there was a discrepancy, and therefore it was improper for her to change the computer database and for her to make no note in the law book or anywhere else regarding that. If the court looks in the joint appendix, her letters to the agency in response to the proposed removal say nothing about knowing the source of the discrepancy at the time she went into the computerized database. Well, that of course was her problem. She hadn't stolen any films. She hadn't done anything wrong as near as she could tell, although she thought maybe she had failed putting it in the computer, although she wanted to ensure that apparently. In fact, the evidence seems to be that she did properly put it in the computer, but the computer didn't know it or whatever that meant. It's not entirely clear on that. So she didn't apparently do anything wrong until she did the cover-up. Now, cover-ups seem to be a favorite thing in Washington, and they seem to always do people in. But okay, it's one thing to cover up the warning. It's something else to try to keep her job. She was concerned about losing her job and managed to cause her concern to lose it. It's precisely what happened. The counsel for the other side says beyond reason. Well, if you and I were sitting as arbitrators in this case, what do you think you would have done? What would I have done in these circumstances? Yes. I think that her decision to change the computer inventory when she had no reason for doing so and not noting it anywhere in the law book or elsewhere was completely inappropriate. It was certainly inappropriate. It was certainly warranted proper discipline. Did it warrant removal? I'm not sure that my personal opinion about whether it warranted removal is the question. Removal was certainly within the range of penalties, and given that this was the core of her job and this is what permitted the Navy to comply with DEA regulations on maintaining inventories of these drugs. It's not a trivial policy at all. It's very serious and very important for the Navy to comply with this policy. And she showed herself to be untrustworthy with respect to this core part of her job. I know that there is evidence in the record that perhaps she panicked, perhaps she was afraid of losing her job, but that does not change. She was a long-time employee for four or five years. Certainly, and both the proposing official, the deciding official, and the arbitrator all considered that. Unfortunately, that was not enough to change the decision as to the ultimate penalty because this was the core of her job. It was a very important responsibility, and she simply failed to comply with it. That's it? That's why the penalty is reasonable. With respect to the nexus question, Ms. Sanik has suggested that the arbitrator did not properly find that there was a nexus between her actions and the efficiency of the service. However, Brown v. Navy clearly states that this court applies a deferential standard on the nexus question, and the question is whether the misconduct is likely to have an adverse impact on the agency's performance of its functions. Here there is a nexus question. Do you think she's likely to do this again? Do I personally think she's likely to do this again? I personally don't know. However, there was testimony in the record from the people who actually would know, the agency, which is who this court would defer to, both Captain Heaton as well as Commander DeLaura, the deciding official and proposing official. They're the ones that know her. They're the ones that know the situation, and they're the ones that determined that removal was appropriate, having considered all of the relevant factors. Finally, I would just like to remind the court of the standard that's to be applied to the reasonableness of the penalty, which is that the penalty should only be reversed if it is grossly disproportionate. Now, counsel has suggested that there are certain facts that the arbitrator did not consider in determining whether the penalty was reasonable. Counsel has not pointed to what those facts are. What the arbitrator did was appropriate. He determined whether or not the deciding official and proposing official properly considered the Douglas factors and included any mitigating factors in deciding the penalty. And it is clear from the record that that's precisely what happened. The only mitigating factors that have been alluded to at all are Ms. Sadiq's prior service record and the reasons why she took this action contrary to policy. I assume under our standard of review, it's not our place to weigh the mitigating factors. No, it's not, unless this court found that the arbitrator improperly found that the deciding official did not consider the mitigating factors. However, there is clear evidence in the record that the arbitrator did consider, properly determine that the deciding official considered the mitigating factors. And those mitigating factors, as I mentioned, are few in number. They were considered by the deciding official who determined that because this offense went to the core of her job and her trustworthiness, that removal was the appropriate response. So unless the court has any further questions for me, thank you. All right.